**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KATHLEEN F. CAHILL )<br>)<br>Plaintiff, )<br>)<br>COFFEYVILLE REGIONAL )<br>MEDICAL CENTER, INC. )<br>Defendant. )<br>_____ ) | Case No. 6:15-CV-01003-EFM-JPO |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

COMES NOW Plaintiff, Kathleen F. Cahill ("Plaintiff"), by and through her undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure hereby submits this Memorandum in Support of Plaintiff's Motion to Dismiss the counterclaims of Defendant, Coffeyville Regional Medical Center, Inc. ("Defendant" or "CRMC"), for fraudulent inducement, fraud by silence, and negligent misrepresentation because such counts fail to state claims upon which relief may be granted. In support of her motion, Plaintiff alleges as follows:

**I. INTRODUCTION**

This is a case in which Plaintiff seeks damages for Defendant's breach of her employment contract and for failure to comply with the requirements of the Fair Credit Reporting Act. Defendant answered on March 26, 2015 (Doc. 10), and asserted aggressive counterclaims for fraudulent inducement, fraud by silence, and negligent misrepresentation based solely on Plaintiff's resume. These claims are outrageous, and are entirely unsupportable under the law. Defendant had five months in which to evaluate Plaintiff before extending her an offer, and every factual allegation cited as support for its unmerited claims could have been discovered

through the most minimal effort in the evaluation process. Prior to entering into a three-year employment contract with Plaintiff, Defendant failed to: conduct a background check on Plaintiff, ask her to fill out an employment application, ask for a list of all prior employers, or even – apparently – conduct a Google search. Instead, Defendant waited until <u>after</u> Plaintiff had begun performing under her contract and then allegedly conducted the Google search. Based entirely on that information – to which Plaintiff was given no opportunity to respond – Defendant terminated Plaintiff's employment and breached the employment contract and, to make it worse, is alleging fraud against the very person it injured by its breach. As will be shown herein, Defendant has entirely failed to state a claim for any of the three counterclaims alleged, and thus its claims for fraudulent inducement, fraud by silence, and negligent misrepresentation should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

In early 2014, CRMC began a nationwide search for a new Chief Executive Officer. (Doc. 1, ¶7)  Plaintiff was at that time seeking a position as a CEO for a hospital, and applied for CRMC's open position.  (Doc. 1, ¶8)  At the time she applied to CRMC, Plaintiff had worked in healthcare for 37 years, and had held the position of CEO at various hospitals for nearly 30 of those years.  (Doc. 1, ¶10)  Plaintiff submitted a resume with her application in March 2014. She crafted her resume to include only her most relevant prior positions, in order to keep her resume at a manageable length and highlight her relevant skills. None of the positions left off were omitted for any reason of negative history, and in fact she was named "CEO of the Year" at her position at Kindred Hospital in Oklahoma City, Oklahoma, which was not included on the resume.  (Doc. 1, ¶13)

2

Plaintiff's resume contained a mistake as to two dates, and indicated that her position as CEO of North Valley Hospital and Medical Center ("North Valley") in Denver, Colorado lasted from 2004 to 2008, but the "2004" should have been "2006." (Doc. 1, ¶12) The timespan of her position at Summit Hospital of Southeast Arizona in Tucson was listed as "1998" to "2004," but the "2004" should have been "2003." *Id.* Plaintiff was not aware of the date errors at the time she submitted her resume to CRMC. *Id.* All other information on the resume submitted to CRMC was correct, including Plaintiff's employment history for the past 8 years. (Doc. 1, ¶13) Plaintiff went through a lengthy evaluation by CRMC including a full day on-site interview and complete reference checks by board members, but at no point prior to entering her employment contract was she asked to provide a complete employment history or sign a waiver for a background check.[1] (Doc. 1, ¶14-16, 19) Five months after submitting her resume, on August 25, 2014, Plaintiff and CRMC entered into a written three-year employment contract commencing October 1, 2014 for the position of CEO. (Doc. 1, ¶21-26) This contract was not made contingent on completion of a background check. On October 6, 2014, however, Plaintiff was informed that her contract was being terminated.

Plaintiff has asserted three counterclaims in this case. The claims asserted of fraudulent inducement, fraud by silence, and negligent misrepresentation all are based on the same set of facts concerning Plaintiff's resume. Defendant alleges that Plaintiff omitted three prior job positions (in the 2002 to 2006 time frame), that she made two errors as to dates (the last in 2008) and that she "withheld" that she had worked in Oklahoma City when a Board Member asked if she had ever lived in the Midwest. (Doc. 10, ¶2-9)

---

[1] The failure to perform a background check during the five-month evaluation process appears to be negligent considering the Hospital CEO position for which Plaintiff was being evaluated.

### III.  ARGUMENTS AND AUTHORITIES

**A.     Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) factual disputes cannot be resolved, but instead, the well-pleaded facts of the claim must be read in the light most favorable to the claimant, and dismissal is appropriate when the allegations in a claim demonstrate a claimant does not have a claim.  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Generally, the court should look only to the allegations set forth in the applicable pleadings in deciding a motion to dismiss. Although the claimant need not precisely state each element of its claim, the claimant must plead minimal factual allegations on material elements that must be proved. *Heslop v. UCB, Inc.*, 175 F.Supp.2d 1310, 1315 (D.Kan.2001) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)).

**B.     CRMC Fails To Allege That Plaintiff Made Material Misrepresentations, Fails To Establish Justifiable Reliance, And Thus Fails To State A Claim For Fraudulent Inducement.**

In alleging fraud, a party must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). To recover on a claim of fraudulent inducement, a plaintiff must prove the following elements: (1) the statement of fact was false; (2) the party making the statement knew it was false; (3) the statement was made with the intent to deceive or made recklessly with a disregard for truth; and (4) the plaintiff justifiably relied on the statement and sustained injury. *Earth Scientists v. United States Fidelity & Guar.,* 619 F.Supp. 1465, 1472 (D.Kan.1985) (citing *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 268, 679 P.2d 736, 742 (1984)). However, as demonstrated below, Defendant has failed to state a claim for fraud. Defendant accuses Plaintiff of having engaged in resume fraud, but the alleged conduct, even if true, clearly does not as a matter of law constitute fraud.

The purpose of a resume is to provide a concise summary of relevant skills and accomplishments. Its primary purpose is to highlight the abilities that make an applicant a suitable candidate for the position for which he or she has applied, and to secure an interview for that applicant. *See*, *e.g., Purpose of a Resume,* Georgetown School of Law.[2] It is not intended to present a complete employment history, nor, in employment searches like Defendant's for a new CEO, is it intended to comprise the entirety of the application process. It is the first step in a lengthy process leading to employment.  The typical use or purpose of a resume is to aid the individual in securing a position or business. *Devil's Advocate, LLC v. Zurich American Ins. Co.*, 2014 WL 7238856, *4 (E.D.Va.2014).  A "resume provides a snapshot of some of [the applicant's] relevant qualifications."  *Dewick v. Maytag Corporation,* 324 F.Supp.2d 894, 897 (N.D.Ill.2004).

The United States District Court for the District of Kansas has held that the necessary evaluation in a claim of resume fraud is whether the misinformation in the resume would be considered by a reasonable, objective employer to be a material misstatement or omission. *Walker v. Saga Communications, Inc.*, 11 F.Supp.2d 1292, 1295–96 (D.Kan.1998). The *Walker* case concerned Wayne Walker, an applicant for a position at a television station, who intentionally omitted a previous job with a radio station from the resume he submitted with his job application because he had been terminated for dating the estranged wife of a coworker. *Id.* at 1293. He also falsely stated that he had been working at another job during the time of the radio station position to avoid disclosing the prior employment and termination. *Id.* at 1296. The *Walker* court specifically distinguished the instant factual scenario, stating "[t]his is not a case where a job applicant…merely did not list all of his previous employment." *Id*. The court further

---

[2] https://www.law.georgetown.edu/academics/academic-programs/graduate-programs/careers/job_search_skills/preparingeffectiveresume/purpose.cfm.

5

distinguished situations in which the omission or error was accidental. *Id.* (stating "Walker does not even argue that the omission and false statement were not deliberate"). The case is further distinguishable because Walker submitted a job application that incorporated his resume by reference, and the television station's employee manual specifically stated that an employee could be terminated for falsifying company records, including the employment application. *Id.* at 1293–94. In the case at bar, Plaintiff was never asked to submit a job application.

Other Kansas cases have similarly held that the central issue is whether the misrepresentation is a material one. *See e.g. Maxwell v. Americold Logistics L.L.C.*, 2000 WL 210229, *2 (Kan.App. 2000), *unreported opinion* (employee lied about prior felony convictions in job application); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 326 (10th Cir. 1996) (employee lied about marital status in job application to subvert employer's policy of not hiring spouse of current employee); *Barwick v. City of Aurora, Animal Care Div.*, 17 F.3d 1436, 1436 (1994), *unreported opinion, referenced in table* (employee lied about having received college degree in employment application); *Churchman v. Pinkerton's Inc.*, 756 F.Supp. 515, 517 (D. Kan. 1991) (employee lied about previous terminations for cause, drug use, history of home addresses that would be used to check police records in job application for security officer position). As in *Walker*, these cases all address employees who included material misrepresentations in their job applications, and their employers had written policies to terminate employees for falsification of a job application. In contrast, Plaintiff made no material misrepresentations and moreover was never asked to submit a job application. Plaintiff's decision to tailor her resume to relevant jobs and her inadvertent error as to two dates comes nowhere near the type of misrepresentations found to be material in job applications. Those cases all involve direct lies designed to cover bad facts.

6

Other jurisdictions have refused to find omissions on a resume to be fraudulent. For example, a New York court found that deliberate omissions of prior positions and misstatements of dates of employment were not sufficient to constitute fraud. *Nat'l Med. Health Card Sys., Inc. v. Fallarino*, 21 Misc. 3d 304, 313, 863 N.Y.S.2d 556 (N.Y.Sup. Ct. 2008). The court held, ***"Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."*** *Id.* at 312 (emphasis provided) (citing *Siemens Westinghouse Power Corp. v Dick Corp.*, 299 F. Supp 2d 242, 247 [S.D.N.Y. 2004], quoting *Grumman Allied Indus., Inc. v Rohr Indus., Inc.*, 748 F.2d 729, 737 [2d Cir. 1984]; *see Rudolph v Turecek*, 240 A.D.2d 935, 938 [3d Dept 1997] ["where a party has the means, by the exercise of reasonable diligence, to ascertain the truth or falsity of material representations, he or she cannot assert justifiable reliance"].))  The court stated that the employer failed to verify the applicant's employment history though it would have been readily available "via 10-k filings, background checks and calls to former employers." *Id.* Furthermore, "[p]roof that due diligence would have demonstrated the falsity of [Applicant's] resume is found from the fact that after his firing, [Employer] determined to look more closely at it in the apparent hope of establishing a justification for claiming that [Applicant] was terminated for cause." *Id*.

The *Nat'l Med.* case includes anther important factual similarity – the applicant did not prepare a job application. *Id.* at 307–08. "Such application would be significant inasmuch as it contains a provision that the information is provided under oath and that any false statement would be grounds for dismissal." *Id*.  The applicant also testified that a resume is an introduction which gives the candidate an opportunity to get his foot in the door and allow for a one-on-one interview. *Id.* at 305. He stated that omissions can be addressed at an interview since a review of

7

references and employments listed would disclose the accuracy of a resume's contents. *Id.* The *Nat'l Med.* court placed the burden on the employer in exercising due diligence to evaluate a resume. The *Nat'l Med.* court's reasoning is sound, and should be followed here.

CRMC alleges that the omission of three previous positions from Plaintiff's resume, an inaccuracy in dates of employment on her resume, and her response to a question regarding living in the Midwest constitute fraudulent inducement. There is no caselaw that even remotely supports a claim of fraud based on these weak allegations. In fact, the *Walker* court specifically distinguished the submission of a resume like Plaintiff's in which a complete employment history is not provided from the submission of a resume that could be considered fraudulent. *See also Massey v. Trump's Castle Hotel & Casino*, 828 F. Supp. 314, 327 (D. N.J. 1993) (finding that employee did not commit fraud by failing to provide complete job history where employer did not request it).

Plaintiff has been in CEO positions for nearly 30 years. Were she to include her entire employment history, her resume would be abnormally long. CRMC has failed to allege any fact that would support their allegation that her intent in omitting the three positions identified by CRMC was to deceive – not to highlight her relevant work history. Plaintiff did not conceal any negative history by failing to include the four positions – in fact she was named CEO of the Year at one of the positions left off of her resume. At no point did CRMC request a complete employment history, nor did CRMC make any attempt to verify Plaintiff's employment history through a background search or even an internet search in the five months during which it evaluated her application. This due diligence was only performed after the employment contract had been entered into by both parties.

CRMC fails to allege fraud with particularity because it cannot show that Plaintiff had any fraudulent intent to deceive or reckless disregard for the truth in her statements, that it justifiably relied on her statements regarding her employment history, or that it was damaged by its reliance. Plaintiff made an admitted error of dates, tailored her resume to the position for which she was applying, and discussed a cousin's residence rather than a prior extremely successful Midwest position with the Board of Directors.[3] None of these actions concern material misrepresentations, and thus none come close to constituting fraud. CRMC failed to perform its due diligence in requesting a complete employment history and critically evaluating the history provided. Finally, CRMC has made no allegation whatsoever regarding its likelihood of hiring Plaintiff had it known she had held other jobs. CRMC wholly fails to state a claim for fraudulent inducement, and thus its counterclaim should be dismissed.

**C.    CRMC Fails To Allege Any Misrepresentation By Plaintiff That Could Not Have Been Discovered By The Exercise Of Reasonable Diligence, And Thus Fails To State A Claim For Fraud By Silence.**

As was previously stated, Rule 9(b) of the Federal Rules of Civil Procedure requires a party to state with particularity the circumstances constituting fraud. In Kansas, to prove a cause of action for fraud by silence, plaintiff must set forth by clear and convincing evidence:

> (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could [not] have discovered by the exercise of reasonable diligence;
> (2) that defendant was under an obligation to communicate the material facts to the plaintiff;
> (3) that defendant intentionally failed to communicate to plaintiff the material facts;
> (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and

---

[3] Defendant's complaint about Plaintiff's response to the "Midwest" question is apparently based on its view that Oklahoma City is located in the "Midwest." Oklahoma is typically not considered to be part of the "Midwest." *See Midwestern United States*, Wikipedia http://en.wikipedia.org/wiki/Midwestern_United_States (last modified April 21, 2015, at 10:50).

9

> (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to the plaintiff.

*Ensminger v. Terminix Int'l Co.*, 102 F.3d 1571, 1573-74 (10th Cir. 1996) (citing *Eckholt v. American Business Information, Inc.*, 873 F.Supp. 510, 519–20 (D.Kan.1994)). "Where one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expedience of the bargain." *Id.* at 1574 (citing *Wolf v. Brungardt*, 215 Kan. 272, 524 P.2d 726, 736 (1974)).

CRMC alleges that Plaintiff omitted three positions from the employment history included on her resume, misrepresented the dates of employment of two positions, and failed to discuss a period of employment in Oklahoma City when asked about living in the Midwest. Though these allegations are made about three separate statements, the essential issue alleged by CRMC is that Plaintiff did not provide a complete and accurate employment history. However, CRMC never requested a complete employment history. *See Massey*, 828 F.Supp. at 327 (finding that employee did not commit fraud by failing to provide complete job history where employer did not request it). CRMC could easily have obtained a complete employment history through the exercise of reasonable diligence – simply requesting the history from Plaintiff would have sufficed. The employment history included in Plaintiff's resume was entirely accurate for the most recent eight-year period.

Furthermore, CRMC has failed to state a claim for fraud by silence because the information at issue was easily discoverable by reasonable diligence. *See Ensminger*, 102 F.3d

at 1573-74 (requiring clear and convincing evidence that the information at issue could not have been discovered by reasonable diligence). Indeed, CRMC apparently discovered the information by conducting a simple Google search, which it could have and should have conducted before it entered into the binding and unconditional 3-year employment contract. Plaintiff should not be held responsible for CRMC's negligence in failing to do basic due diligence.

CRMC also claims that Plaintiff concealed the material fact that it could not trust her to be honest and truthful. As was previously discussed above, any misstatement in Plaintiff's application process was inadvertent and unintentional. The omission of certain prior positions was done with the goal of tailoring a long, successful career into a manageable, concise format that would highlight relevant skills. Plaintiff did not conceal any negative information about her employment history, she simply chose to present the prior positions that were most similar to the position she sought with CRMC. These allegations in no way reflect on Plaintiff's honesty and truthfulness in dealing with CRMC. CRMC's claim for fraud by silence should be summarily dismissed.

**D.    CRMC Fails To Adequately Plead That It Was Damaged By Its Reliance On The Misstatement In Plaintiff's Resume, And Thus Fails To State A Claim For Negligent Misrepresentation.**

The Kansas Supreme Court has stated that a party who has committed the tort of negligent misrepresentation is, "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 218, 4 P.3d 1149, 1165 (2000).

CRMC relies on the same allegations of inaccuracy and omissions with which it attempted to support its claims for fraud. The only false information included in the allegations made by CRMC is the error in dates of employment with North Valley. The omission of three prior positions in her resume, and the response to a board member's question regarding living in the Midwest do not constitute false information – at no point did Plaintiff represent that she had provided a complete employment history and Defendant never requested one. Thus, to adequately plead justifiable reliance on false information, CRMC must allege that the knowledge that the length of Plaintiff's employment with North Valley was two rather than four years would have led to the rejection of her application. Any such allegation is completely absent – CRMC simply makes the general allegation that it was injured by Plaintiff's representations.

Even should all of CRMC's allegations regarding Plaintiff's employment history be taken into account in the evaluation of a negligent misrepresentation claim, CRMC's counterclaim still fails to allege that knowledge of Plaintiff's full employment history would have altered its decision to enter into an employment contract. None of the three positions omitted from Plaintiff's resume had any negative history with Plaintiff. She earned the award of "CEO of the Year" in the Oklahoma City position which CRMC alleges she deliberately failed to mention in response to a board member's question. If CRMC relies so exclusively on knowledge of an applicant's complete employment history in the issuance of a job offer, then surely that history would be requested in the evaluation process. However, CRMC failed to ever request a complete employment history from Plaintiff. None of the omitted information was negative in any way, the inaccuracy in dates was a legitimate oversight, and CRMC has entirely failed to allege that its hiring decision would have been different had it known that Plaintiff had served in CEO

positions in three additional hospitals. CRMC has failed to state a claim for negligent misrepresentation, and thus its counterclaim should be dismissed.

## IV.  CONCLUSION

This is a breach of contract case. It is not a fraud case. For all of the reasons set forth in this memorandum, Plaintiff respectfully requests that this Court grant her motion and dismiss Defendant's counterclaims in this case with prejudice to all future filings pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: April 23, 2015						MORRIS, LAING, EVANS, BROCK, & KENNEDY, CHARTERED

By: /s/ Diane S. Worth
    Diane S. Worth, #12226
    Ryan M. Peck, #21223
    300 N. Mead, Suite 200
    Wichita, KS 67202
    Telephone: (316) 262-2671
    Facsimile:  (316) 262-6226
    dworth@morrislaing.com
    rpeck@morrislaing.com
    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23 2015, I caused the foregoing **Memorandum in Support of Motion to Dismiss** to be electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

    Alan L. Rupe #08914
    Jason M. Janoski #24614
    Lewis, Brisbois, Bisgaard & Smith, LLP
    1605 N. Waterfront Parkway, Suite 150
    Wichita, KS 67206
    Alan.rupe@lewisbrisbois.com
    Jason.janoski@lewisbrisbois.com
    *Attorneys for Defendant*

    /s/ Diane S. Worth
    Diane S. Worth